## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

Donald J. Alexander,

                Plaintiff,

-vs-                                                Case No.  2:10-cv-00437-FtM-29SPC

Michael J. Astrue,
Commissioner of Social Security,

                Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Plaintiff, Donald J. Alexander's Complaint,

Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner)

denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on July 12, 2010.  The

Plaintiff filed his Memorandum of Law in Support of His Position (Doc. #11) on December 15,

2010.  The Commissioner filed the Memorandum of Law in Support of the Commissioner's

Decision (Doc. #13) on February 14, 2011.  Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before

the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings

and memoranda submitted by the parties in this case

# FACTS

## *Procedural History*[1]

The Plaintiff filed an application for disability and disability insurance benefits on March 8, 2007, alleging an onset disability date of October 31, 2003.  (Tr. 132-33).  The claims were denied initially on June 20, 2007, and reconsidered on May 23, 2008.  (Tr. 92-96).  The Plaintiff timely filed a request for hearing on July 9, 2008.  (Tr. 98).  On June 5, 2009, the Plaintiff appeared and testified at a hearing held by video before the Honorable Judith A. Showalter, Administrative Law Judge (ALJ), in Dover, Delaware.   At his hearing before the ALJ, the Plaintiff amended the alleged onset date of disability to December 28, 2006, to reflect an earlier unfavorable decision by an Administrative Law Judge on December 27, 2006.  (Tr. 12,43).  The ALJ issued an unfavorable decision on July 16, 2009. (Tr. 9-22).  The Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council on August 6, 2009.  (Tr. 7-8). The Appeals Council denied Plaintiff's Request for Review on May 13, 2010.  (Tr. 1-6). The Plaintiff has exhausted his administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g). Attorney Stacey B. DeVeaux represents the Plaintiff.

## *Plaintiff's History*

The Plaintiff originally alleged a disability onset date of October 31, 2003 (Tr. 12), but later amended that date at his hearing to December 28, 2006.  (Tr. 43-44).  Plaintiff was born on June 24, 1964, and was forty-five years old when the hearing decision was issued. The Plaintiff has a high school education and past relevant work history as a foreman for mechanical contractor in the plumbing industry. (Tr. 13,21). The Plaintiff was involved in a work-related slip

---

[1] There are discrepancies between several of the dates used by the Plaintiff in his brief and the ALJ's opinion.  The Undersigned has used the dates indicated in the administrative record.

and fall (Tr. 49), and alleges disability due to degenerative disc disease, arthritis, bulging and herniated discs with lumbar radiculopathy, restless leg syndrome, and depression.  (Tr. 164).

<u>*Medical History*</u>

In 2003, the Plaintiff slipped and fell while carrying an acetylene tank and a ladder up a hill.  (Tr. 49).  Alleging injury to his lower back, the Plaintiff stopped working after that incident.  (Tr. 49-50).  At the hearing in front of the ALJ in July 2009, the Plaintiff explained that he had daily pain at the belt line which constantly radiated to his legs.  (Tr. 52-53).  He reported fatigue due to hypothryroidism (Tr. 55) and stiffness and spasms associated with his pain.  (Tr. 53).  He claimed that he had not pursued back surgery because he was concerned it could make his limitations worse.  (Tr. 63-64).  Plaintiff testified that he sleeps two to four hours per night (Tr. 60) and spends the bulk of his day lying down and watching television.  (Tr. 63).  He stated that he can walk and stand less than one hour per day (Tr. 57-58), can sit for fifteen to twenty minutes at a time (Tr. 58), and is unable to kneel or stoop.  (Tr. 59).  He noted that he experiences diarrhea and fatigue as side-effects of the medication he takes.  (Tr. 56-57).  He explained that he has difficulty concentrating and is often forgetful.  (Tr. 59).  He does not do any household chores or grocery shop (Tr. 60-61), but he does occasionally prepare food for himself.  (Tr. 60).  He reported that he has difficulty driving (Tr. 61) and that he goes to church two to three times per month.  (Tr. 62).

Kartik Swaminathan, M.D., evaluated the Plaintiff on October 19, 2005.  (Tr. 407).  The Plaintiff complained of chronic low back pain with bilateral lower extremity radicular pain.  (Tr. 407).  Examination revealed lower lumbar facet and intervertebral joint tenderness, positive straight leg raising on the right, minimal weakness of the right ankle dorsiflexor, antalgic gait,

and deep seated myofascial tenderness in the right gluteal musculature.   (Tr. 407).   Dr. Swaminathan believed that Plaintiff's pain was due to chronic lumbar radiculopathy with lumbar facet arthropathy.   The doctor recommended Facet injections and prescriptions for Lidoderm patches and Percocet.  (Tr. 407).  No changes were noted on November 21, 2005.  (Tr. 406).  On December 21, 2005, an examination revealed lumbar spasms, tenderness, decreased range of motion, and bilateral ankle weakness.  (Tr. 405).

On January 5, 2006, the Plaintiff received a lumbar trans-laminar epidural steroid injection, performed by Manonmani Antony, M.D.  (Tr. 424).  Dr. Antony diagnosed lumbar herniated nucleus pulposus and lumbar radiculopathy.  (Tr. 424).  A second injection was performed by Dr. Antony on February 2, 2006.  (Tr. 422).  On March 16, 2006, the Plaintiff reported pain in the back that radiated to the lower extremities with tingling, numbness, and weakness.  (Tr. 401).  Dr. Antony's examination noted decreased range of motion in the spine. (Tr. 401).  On April 10, 2006, Dr. Antony performed a L4-5 analgesic discogram that was consistent with discogenic low back pain and herniated nucleus pulposus.  (Tr. 416).  An MRI of the lumbar spine performed on April 24, 2006, revealed degenerative disc disease at the L4-5 and L5-S1 levels with disc bulges and spondylotic changes.  (Tr. 297-98).

On May 3, 2006, Plaintiff was seen by Ganesh Balu, M.D.  (Tr. 399).  He complained of pain with activity, weakness, fatigue, depression, headaches, and stiffness.  (Tr. 399).  Dr. Balu diagnosed discogenic lower back pain.  (Tr. 399).  No changes were noted at subsequent visits through October 2006.  (Tr. 394-98).

On September 29, 2006, Dr. Kenneth Smith, the Plaintiff's treating physician, diagnosed the Plaintiff with chronic back pain with radiculopathy and depression.  (Tr. 303).  Dr. Smith

completed a Medical Opinion Re: Ability to do Work-Related Activities (Mental).  (Tr. 318-19).  Dr. Smith opined that the Plaintiff had no useful ability to maintain regular attendance and be punctual within customary tolerance, to sustain an ordinary routine without special supervision, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 318).  The doctor noted that he was limited and distracted by pain, as well as depressive symptoms.  (Tr. 319).  Dr. Smith also assessed that Mr. Alexander would be absent from work more than four days per month.  Id.

On October 5, 2006, Plaintiff complained of unchanged symptomatology of pain, weakness, stiffness, and depression and anxiety.  (Tr. 394).  Dr. Antony's examination noted spasm, tenderness, decreased range of motion, decreased manual motor testing, and decreased deep tendon reflexes.  (Tr. 394).  He was diagnosed with chronic lower back pain.  (Tr. 394).  Dr. Antony found no changes at regular monthly follow-up visits through June 2008.  (Tr. 361,363-69,371,377,387-92,455-59).

Dr. Antony completed a Residual Functional Capacity Evaluation dated October 6, 2006.  (Tr. 323-25).   He diagnosed lumbar radiculopathy, lumbar facet syndrome, and disc displacement.  (Tr. 323).  Dr. Antony opined that the Plaintiff could lift or carry only five pounds, stand and/or walk one hour total in an eight-hour day, and sit one hour total in an eight-hour day.  (Tr. 323).  The doctor also reported that Plaintiff needed to lie down and elevate his legs more than two hours during an eight-hour day.  (Tr. 323).  Dr. Antony reported that Plaintiff would miss at least one hour of work a day as a result of his symptoms.  (Tr. 324).  The Plaintiff was found to be entirely precluded from twisting, stooping, crouching, climbing stairs, and pushing/pulling due to chronic back pain.  (Tr. 324).  Dr. Antony also noted that Plaintiff

suffered from depression and anxiety that affected his physical condition.  (Tr. 324).  Dr. Antony

cited to MRI, EMG, X-ray, and CT scan findings that supported his opinion.  (Tr. 325).

On December 18, 2006, Plaintiff complained of chronic back pain.  (Tr. 353).  Dr. Smith

noted limited motion of the lumbar and lumbosacral spine and prescribed Percocet and Soma.

(Tr. 354).   No changes were noted on February 1, 2007, and Plaintiff was referred to a

neurosurgeon.  (Tr. 355-56).  Dr. Smith noted no changes at subsequent visits in May and August

2007.  (Tr. 343-44,351-52).

On August, 19, 2007, Dr. Smith completed a narrative regarding Plaintiff (Tr. 345),

noting that despite treatment with physical and injection therapy, Plaintiff still had limiting back

pain.  (Tr. 345).  It was noted that he might respond to surgery, but Plaintiff was reluctant to

pursue this because of the possibility of deterioration.  (Tr. 345).  Examination revealed limited

motion, paraspinal tenderness, radicular symptoms into the right lower extremity, and 4/5

weakness of the dorsi flexor of the right foot.  (Tr. 345-46).  Dr. Smith diagnosed chronic lumbar

radiculopathy, pain syndrome requiring chronic pain medication, and depression secondary to

chronic pain syndrome.  (Tr. 346).

On November 27, 2007, Dr. Smith completed a Multiple Impairment Questionnaire.  (Tr.

333-40).  The doctor diagnosed chronic discogenic back pain and lumbar radiculopathy with a

poor prognosis.  (Tr. 333).  Clinical findings were chronic pain to palpation and chronic radicular

symptoms.  (Tr. 333).  Dr. Smith also cited to MRI findings that supported the diagnoses.  (Tr.

334).  Dr. Smith opined that in an eight-hour workday, Mr. Alexander was able to sit less than

one hour total and stand/walk one hour total.  (Tr. 334).  Plaintiff was found to have significant

limitations in repetitive reaching, handling, fingering, and lifting due to his low back pain.  (Tr.

336).  Dr. Smith opined that Plaintiff's pain, fatigue, or other symptoms constantly interfered with his attention and concentration.  (Tr. 338).  He noted that Plaintiff also suffered from depression and anxiety that contributed to the severity of Plaintiff's symptoms and functional limitations.  (Tr. 338).  Dr. Smith estimated that Plaintiff would be absent from work, on the average, more than three times a month.  (Tr. 339).  No changes were found by Dr. Smith on subsequent visits on January 3, 2008, May 12, 2008, and February 23, 2009.  (Tr. 341-42,491-92,493-94).

Dr. Jona Gorra, an SSA Consultative Examiner, evaluated Mr. Alexander at the behest of the Administration on May 14, 2008.  (Tr. 427). On examination, Dr. Gorra noted that Plaintiff needed assistance dressing, and experienced tenderness in the lumbar area, difficulty with positive straight leg raising bilaterally, and inability to flex the lumbar spine.  (Tr. 428-29).  Dr. Gorra diagnosed Plaintiff with chronic low back pain, history of restless leg syndrome, and depression.  (Tr. 429).  Dr. Gorra did not provide an opinion on Mr. Alexander's functional limitations.

Dr. Antony completed a Lumbar Spine Impairment Questionnaire on June 17, 2008.  (Tr. 441-47).  He diagnosed lumbar radiculopathy, lumbar facet syndrome, lumbar disc degeneration, and lumbar disc displacement.  (Tr. 441).  Clinical findings included limited range of motion in flexion, extension, and bilateral lateral flexion, tenderness in the upper and lumbar facets, muscle spasms, antalgic gait, diminished reflexes in the left knee and ankle, muscle weakness of the left leg, trigger points of the lower back, and, positive straight leg raising to ninety degrees on the left and thirty degrees on the right.  (Tr. 441-42).  Dr. Antony cited to MRI findings that supported the diagnoses.  (Tr. 442).  The Plaintiff's primary symptoms were intractable and continuous

pain in the lower back and both legs, weakness of the left leg, poor sleep, and chronic fatigue during the day. (Tr. 442). Dr. Antony opined that in an eight-hour workday the Plaintiff was able to sit less than one hour total and stand/walk less than one hour total. (Tr. 443). He noted that the Plaintiff needed to get up and move around every half hour when sitting. (Tr. 444). The Plaintiff was limited to only occasionally lifting/carrying five pounds. (Tr. 444). Plaintiff was taking Percocet, Lyrica, and Soma. (Tr. 444). Spinal injections were discontinued due to increased pain. (Tr. 445). Dr. Antony assessed that the Plaintiff's pain or other symptoms constantly interfered with his attention and concentration, and that anxiety and depression contributed to his symptoms and functional limitations. (Tr. 445). Dr. Antony estimated that Mr. Alexander would be absent from work, on the average, more than three times a month. (Tr. 446). The Plaintiff was told to avoid wetness, temperature extremes, humidity, pushing, pulling, kneeling, bending, and stooping. (Tr. 446).

No changes were noted at subsequent monthly visits with Dr. Antony through October 2008. (Tr. 451-53). An EMG performed on October 29, 2008, revealed electrodiagnostic evidence of mild to moderate right sided L5 lumbar radiculopathy. (Tr. 486). On February 19, 2009, Dr. Antony summarized the Plaintiff's treatment and noted that he had been scheduled for surgery but it was not done due to family problems and multiple stress factors. (Tr. 470). Dr. Antony opined that although the Plaintiff's pain was controlled on medications, any physical activities (including prolonged standing and sitting) increased the pain. (Tr. 470). Dr. Antony opined that as a result, the Plaintiff was unable to work. (Tr. 473). Dr. Antony completed a second Lumbar Spine Impairment Questionnaire following an examination on May 14, 2009. (Tr. 474-480).

In a letter dated February 23, 2009, Dr. Smith reported that Plaintiff continued to undergo treatment and had been unable to perform any full-time work since December 2006.  (Tr. 462). On May 20, 2009, Dr. Smith also completed a second Multiple Impairment Questionnaire wherein he reported unchanged findings.  (Tr. 510-17).

<u>Administrative Law Judge's Decision</u>

Upon consideration of the record, the ALJ found that the Plaintiff last met the insured status requirements of the Social Security Act on December 28, 2008.  (Tr. 14).  The Plaintiff did not engage in substantial gainful activity during the period from his amended onset date of December 28, 2006, through his date last insured.  (Tr. 14).  The ALJ found the Plaintiff suffers from the following severe impairments: chronic lumber sacral degenerative disc disease and facet syndrome.  (Tr. 14).  No impairment nor combination of impairments meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).  (Tr. 15).  The ALJ further determined that the Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the exception of climbing ladders, ropes, or scaffolds, which the ALJ determined the Plaintiff is unable to do. (Tr. 15).  The ALJ determined that through the date last insured the Plaintiff was unable to perform any past relevant work, but that there were jobs that existed in significant number in the national economy that claimant could have performed.  (Tr. 21).  Thus, the ALJ found that the Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 31, 2003, the initially alleged onset date, through December 28, 2008, the date last insured.  (Tr. 22).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. <u>Hibbard v. Comm'r</u>, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2] 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." <u>Hibbard</u>, 2007 WL 4365647 at *2 (citing <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838B39 (11th Cir. 1982))); <u>Richardson</u>, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237-40 (11th Cir. 2004); <u>Foote v. Chater</u>, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g)(sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§

404.1505 - 404.1511. To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states the case should be remanded to the Commissioner due to the following errors: (1) contrary to the ALJ's decision, the Plaintiff is *per se* disabled under Medical Listing 1.04A; (2) the ALJ failed to follow the treating physician rule; (3) the ALJ failed to properly evaluate the Plaintiff's credibility; and (4) the ALJ relied on incomplete vocational expert testimony.   The Commissioner argues the ALJ's decision was based upon substantial evidence and should be affirmed.

*(1) Whether the Plaintiff is* Per Se *Disabled Under Medical Listing 1.04A*

At the third step in the disability analysis, the ALJ must consider the medical severity of the claimant's impairments.  If the individual has an impairment that meets or equals one of the listed disabilities for the durational requirement, he or she is considered *per se* disabled.  Plaintiff alleges that he meets the standard laid out at Listing 1.04(A).  Listing 1.04(A) provides that an individual is disabled if he has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The Eleventh Circuit standard requires that "[t]o 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the

-12-

conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. § 404.1525(a)-(d). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)).

The ALJ found that the Plaintiff's spine impairment did not meet Listing 1.04A. (Tr. 15). She did not find the Plaintiff's impairment to be associated with evidence of nerve root compression characterized by the four conditions (neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test). (Tr. 15). The ALJ found that the Plaintiff's spine impairment did not meet 1.04B. (Tr. 75). There the ALJ noted that the Plaintiff did not show that his spine impairment was associated with spinal arachnoiditis manifested by severe burning or painful dysesthesia, resulting in the need to change positions in posture every two hours. (Tr. 15). Finally, the ALJ determined the Plaintiff did not meet 1.04C because the spine impairment had not been associated with lumbar spinal stenosis resulting in pseudocladication manifested by chronic nonradicular pain and weakness resulting in the inability to ambulate effectively. (Tr. 15).

The Plaintiff alleges that the ALJ's conclusion is directly contradicted by the record. While the Plaintiff cites to numerous occurrences in the record that substantiate his claim, substantial evidence exists in the record to the contrary. Dr. Smith, Plaintiff's treating physician, notes on several occasions that Plaintiff did not have range of motion limitations in his spine (Tr. 344, 348, 502), had full muscle strength with no sensory loss (Tr. 341,344,348,350,352,354,356, 502), and had normal deep tendon reflexes (Tr. 344,348,352,354,356). Furthermore, at the hearing before the ALJ, Plaintiff's attorney specifically acknowledged that Plaintiff was not

contending that any listing was met. (Tr. 45). The medical evidence provided by the treating physician as well as the Plaintiff's Counsel's own statement indicate that the ALJ's decision is supported by substantial evidence. The Court cannot reverse an ALJ's decision that is supported by substantial evidence in the record.

### (2) Whether the ALJ Failed to Follow the Treating Physician Rule

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439-41; Sabo v. Comm'r of Soc. Sec., 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and

the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency with the record as a whole, (5) specialization in the medical issues at issue, (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at 1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527 (e).

Here, the ALJ found that the opinions of Dr. Smith and Dr. Antony were both inconsistent with the medical record as a whole and purely conclusory. (Tr. 19). Consequently, she afforded both of these opinions little weight. Though both Dr. Smith and Dr. Antony indicated that Plaintiff is limited to sitting, walking, or standing to less than one hour (Tr. 18-19), the ALJ found these conclusions to be inconsistent with the physician's own treatment records.

For example, the ALJ stated that Dr. Smith "always noted on his examination reports that the claimant's lower extremities revealed no loss of strength or motion, there are no sensory deficits or instability noted, with full range of motion, and . . . 'no deformity, limitation of motion, or tenderness on his back.'"  (Tr. 18).  The ALJ continued that Dr. Smith noted "the claimant's extremities revealed no loss of strength or motion."  (Tr. 18).  "There was no sensory deficit or instability noted and his range of motion was full."  (Tr. 18).  The ALJ noted that although Dr. Smith listed chronic obstructive pulmonary disease as an impairment, "there was no such diagnosis in the file, nor any pulmonary function, nor any actual treatment records, and the Plaintiff did not relate any such pulmonary impairments during his testimony at the hearing. (Tr. 18).  The only time chronic obstructive pulmonary disease was mentioned in the records was in March 2009, without any explanation or mention in that examination note.  (Tr. 18).  The ALJ stated that "[i]t could not be determined from this note as to why Dr. Smith wrote that, as he recorded that the respiratory examination revealed normal respiratory effort, with no chest wall deformity, rib tenderness, or abnormal breath sounds."  (Tr. 18).

The ALJ further pointed out that Dr. Smith had completed "both physical and mental residual functional capacity assessments wherein, despite continuously writing for years that the claimant's mental state was normal . . . he found the claimant unable to work due to mental problems."  (Tr. 18).  The ALJ found that Dr. Smith's opinions about the Plaintiff's functional capacity were extremely inconsistent with his office treatment records, "in which he generally noted that the claimant had no loss of strength or motion in his extremities, and only a brief note of tenderness and tightness of his lumbosacral spine, and no mental illness."  (Tr. 19).  She noted further, that Dr. Smith did not point to objective testing to substantiate his opinion that the

Plaintiff's pain management treatment had not been helpful.  (Tr. 19).  The ALJ found that Dr. Smith's comments that the pain management had not been successful was contradicted by the pain management physicians.  (Tr. 19).

Similarly, the ALJ found Dr. Antony's opinion upon the issue of disability to be purely conclusory.  She noted that Dr. Antony's notes indicated that "the claimant's pain was fairly well controlled on current medication with minimal side effects."  (Tr. 19).  She pointed out that although Dr. Antony referenced lumbar MRI and EMG tests, he did not express how the results indicated by such tests would impact the Plaintiff's ability to perform work-related activities.  (Tr. 19).  The ALJ found that Dr. Antony's opinions, unsupported by explanation or rationale, are "similar to form reports in which a physician's obligation is only to check a box or fill in a blank" and was purely conclusory.  (Tr. 19).  The ALJ found that such unsupported conclusions are "weak evidence at best."  (Tr. 19).

Essentially, the ALJ found that neither doctor expressed how the conditions suffered by the Plaintiff would impact his ability to do work.  Absent medical testimony to that effect, the ALJ referred to the decision of the prior Administrative Law Judge, issued on December 27, 2006.  (Tr. 20).  The 2006 decision placed the Plaintiff at a light level of exertion.  Here, the ALJ could not find any medical evidence in the record that the Plaintiff's condition had deteriorated since the prior ALJ's decision.  To the contrary, the ALJ noted that Dr. Antony's notes indicated that the claimant is stable and functional with medications.  (Tr. 20).  The ALJ articulated her reasons for discounting the opinions of the Plaintiff's treating physicians and supported her reasons with evidence from the record.  To that end, the ALJ's decision should be affirmed.

### *(3) Whether the ALJ Properly Evaluated Plaintiff's Credibility*

Pain is a non-exertional impairment.  Phillips, 357 F.3d at 1243 n.11.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423 (d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part pain standard.  Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Foote, 67 F.3d at 1561–62; Jones v. Dep't of Health and Human Servs., 941

F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

Here, the ALJ found that the Plaintiff's medically determinable impairment could reasonably cause his pain, but that his statements concerning the intensity, persistence, and limiting effects of the pain were not credible because they were overstated and inconsistent with and unsupported by the "great weight of the documentary medical evidence." (Tr. 17).  The ALJ explicitly laid out her reasoning for discounting the Plaintiff's credibility.  She noted that the Plaintiff testified that he is able to care for his personal needs and can make himself light meals. (Tr. 16).  He has a driver's license and is able to drive.  (Tr. 16).  He is able to go to church two

-19-

to three times per month. (Tr. 16). While the performance of everyday tasks cannot be used to make a determination the Plaintiff is not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson, 284 F.3d at 1226 (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise); Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985) (holding that an ALJ may consider the plaintiff's demeanor when making a credibility determination).

The ALJ further found that two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled:

> First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. (Tr. 17).

Although noting that not conclusory by itself, the ALJ pointed to the fact that there was no medical evidence of outward manifestations of pain. (Tr. 17). Further, she noted that the medical evidence indicates that the Plaintiff is usually stable on pain medication. (Tr. 18). The ALJ considered all of this in conjunction with the fact that Plaintiff had previously filed for unemployment and had rejected surgery. (Tr. 20). Thus, the ALJ fully explained and supported her determination that the Plaintiff's pain was not credible nor disabling. It is not within the

purview of a reviewing court to disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

### *(4) Whether the ALJ Accurately Relied on the Testimony of the Vocational Expert*

When using a Vocational Expert (VE), the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy.  Humphries v. Barnhart, 183 Fed. Appx. 887, 891 (11th Cir. 2006) (citing Phillips, 357 F.3d at 1239.  That hypothetical question must include "all of the claimant's impairments." Humphries, 183 Fed. Appx. at 891 (citing Wilson, 284 F.3d at 1227); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) cert. denied, 529 U.S. 1089, 120 S. Ct. 1723, 146 L. Ed. 2d 664 (2000).

Hypothetical questions asked by the ALJ to the vocational expert must describe comprehensively the claimant's impairments.  Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001) (citing Pendley v. Heckler, 767 F.2d 1561, 1652 (11th Cir. 1985) (per curiam)).  If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence.  Loveless, 136 F. Supp. 2d at 1250. Notwithstanding, the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments.  Id.

Plaintiff states the hypothetical question posed to the VE in this case was incomplete because the ALJ did not include Dr. Smith and Dr. Antony's opinions indicated in the medical

evidence.  The Commissioner responds that the ALJ's hypothetical question fairly set out all of

Plaintiff's reasonable limitations.  The ALJ asked the Vocational Expert to consider a:

> hypothetical person who is the claimant's stated age at the
> amended onset date, would be about 42 or 43: This individual has
> a high school education, is able to read, write, and do at least
> simple math. There are certain underlying impairments that place
> limitations on the ability to do work related activities. We'll start at
> a light level of exertion. In this hypothetical, all of the posturals are
> occasional but there should be no climbing of a ladder, rope or a
> scaffold. This individual should, additionally, avoid concentrated
> exposure to temperature extremes, hazards, dusts, odors, gases,
> fumes, poor ventilation.

(Tr. 65).  In response to this consideration, the VE testified that such an individual would have

been able to perform the requirements of representative occupations such as an office helper

position (350 locally and 130,000 nationally), or a sorter/inspector (150 locally and 70,000

nationally).  When the Plaintiff's attorney asked the VE to consider additional documentation

from the Plaintiff's medical record (Tr. 440-47,510-17), the VE testified that such an individual

would be unable to perform any substantial gainful activity.

Here, the ALJ asked the Vocational Expert to take into consideration all the limitations to

which she found the Plaintiff credibly was subject.  The ALJ did not need to ask the VE to rely

on the opinions of Dr. Smith and Dr. Antony because she had previously discounted those same

opinions as conclusory and unsubstantiated.  The posturals posed to the VE by the ALJ took into

account the limitations that the ALJ found stemmed from Plaintiff's severe impairments.  She

found that the Plaintiff

> has the residual functional capacity to perform light work except
> the claimant cannot climb ladders, ropes or scaffolds.  The
> claimant can occasionally climb ramps and stairs and the claimant
> can occasionally balance, stoop, kneel, crouch and crawl.  The
> claimant should avoid concentrated exposure to temperature
> extremes and hazards.  These findings are consistent with the

> objective medical evidence including diagnostic testing and measurable findings in clinical examinations. The objective medical evidence does not support a finding that the claimant is more severely limited than stated above.

(Tr. 20).

Since the ALJ's hypothetical for the VE included those limitations, the ALJ's hypothetical was properly formulated and thus fairly set out all of the Plaintiff's limitations.

Accordingly, it is now

**RECOMMENDED:**

The final decision of the Commissioner denying the Plaintiff's claim for Disability Insurance should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ____27th____ day of May, 2011.


SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record

-23-